THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUIWU LAI,

                    Plaintiff,

          v.

UNITED STATES OF AMERICA, *et al.*,

                    Defendants.

CASE NO. C17-1704-JCC

ORDER

        This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 15) and Defendants' cross-motion for summary judgment (Dkt. No. 16). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiff's motion and DENIES Defendants' cross-motion for the reasons explained herein.

I.      BACKGROUND

        Plaintiff Huiwi Lai is a Chinese citizen. *See* Certified Administrative Record[1] ("CAR") at 55. He came to the United States on a B1 nonimmigrant visa in August 1997 and has held a Green Card since November 1997. *Id.* at 47. However, U.S. Citizenship and Immigration

_____

        [1] Defendants filed a certified paper administrative record in this matter. (*See* Dkt. No. 19) (Notice of Filing Certified Administrative Record in Paper or Physical Form).

1    Services ("USCIS") now indicates that it has no record that Plaintiff ever applied for lawful

2    permanent resident ("LPR") status, a prerequisite to holding a Green Card. (Dkt. No. 16-1 at 1.)

3    On November 5, 1997, Robert Schofield, a USCIS Officer, completed and approved an

4    Immigration and Naturalization Services ("I.N.S.") Form I-181, Memorandum of Creation of

5    Lawful Permanent Resident, granting Plaintiff LPR status and a resulting Green Card. (Dkt. No.

6    22-1 at 2.) But in 2006, Mr. Schofield pled guilty to accepting bribes to grant LPR status to

7    unqualified individuals. CAR at 45–46. At the time, he identified Plaintiff as a client of Qiming

8    Ye, a broker Schofield worked with to provide Green Cards to individuals in exchange for cash

9    payments. *Id.* at 47–48.

10          Despite this history, USCIS renewed Plaintiff's Green Card in 2009. *Id.*; (Dkt. No. 15-1

11   at 10–11.) USCIS also approved Plaintiff's application to re-enter the country following lengthy

12   travel abroad in 2008. *Id.* Then, in 2013, USCIS denied Plaintiff's application for a re-entry

13   permit. CAR at 43–44. USCIS did so after concluding that Plaintiff was "not and never [had]

14   been a lawful permanent resident" because Officer Schofield had "fraudulently processed"

15   Plaintiff's immigration documents. *Id.* USCIS did not attempt to confiscate Plaintiff's Green

16   Card or take further action. *Id.* at 48. As a result, Plaintiff "continued to travel frequently" on a

17   short-term basis "in and out of the United States." *Id.*

18          Finally, on May 6, 2015, Plaintiff was returning from a short trip to Canada. *Id.* at 21–22.

19   He presented his Green Card to U.S. Customs and Border Patrol ("CBP") agents at the Peace

20   Arch Point of Entry in Blaine, Washington. *Id.* CBP elected to detain and investigate Plaintiff.

21   *Id.* It reviewed USCIS's 2013 letter informing Plaintiff that he did not have LPR status. *Id.* at

22   30–32, 43–44. CBP also reviewed an April 15, 2015 USCIS memo describing Officer

23   Schofield's fraudulent activities and Plaintiff's alleged involvement. *Id.* at 45–48, 71. After

24   questioning Plaintiff, CBP confiscated Plaintiff's Green Card and paroled him into the United

25   States without lawful status. *Id.* at 17–42. The Department of Homeland Security has since

26   initiated removal proceedings. (Dkt. No. 15-1 at 25–26.) A hearing is scheduled before an

1    Immigration Judge for March 14, 2021. (*Id.*)

2        Plaintiff seeks the return of his Green Card and reinstatement of LPR status until such

3    time as Plaintiff's removal proceedings are complete. (Dkt. No. 15 at 10.) Defendants seek

4    dismissal of Plaintiff's claims on the basis that he was never eligible for LPR status and,

5    therefore, no process is due to him. (Dkt. No. 16 at 12.) The Court dismissed Plaintiff's causes of

6    action based on the Immigration and Nationality Act and estoppel. (*See* Dkt. No. 13.) Plaintiff

7    and Defendants now cross-move for summary judgment on Plaintiff's remaining claim: that

8    CBP's confiscation of his Green Card and USCIS's summary rescission of his LPR status

9    violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (Dkt. Nos. 15, 16);

10   (*see* Dkt. No. 1 at 9).

11   **II.    DISCUSSION**

12       **A.    Legal Standard**

13       The APA provides for judicial review of agency actions for any person "adversely

14   affected or aggrieved" by a "final agency action for which there is no other adequate remedy in a

15   court." 5. U.S.C. §§ 702, 704. "[T]he function of the district court is to determine whether or not

16   as a matter of law the evidence in the administrative record permitted the agency to make the

17   decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Where

18   questions before the Court are purely legal, the Court can resolve an APA challenge on a motion

19   for summary judgment. *See Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131

20   (9th Cir. 2010). The Court's role is to determine whether, as a matter of law, evidence in the

21   administrative record supports the agency's decision. *Occidental Eng'g Co.*, 753 F.2d at 769. An

22   agency action must be set aside if it is found to be "arbitrary, capricious, an abuse of discretion,

23   or otherwise not in accordance with law" or "contrary to constitutional right." 5 U.S.C.

24   § 706(2)(A); *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–14

25   (1971). While a federal court should not substitute its own judgment for that of the agency, the

26   agency must examine the relevant data and articulate a satisfactory explanation for its action

1  including "a rational connection between the facts found and the choice made." *Motor Vehicle*

2  *Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations omitted).

3  **B.      Analysis**

4          As a threshold matter, the Court finds that CBP's actions were not arbitrary or

5  capricious. CBP confiscated Plaintiff's Green Card and paroled him into the United States

6  without lawful status based upon the following: its interview with Plaintiff, whom CBP found

7  not to be credible; USCIS's 2013 letter to Plaintiff notifying him that he was not an LPR; and

8  USCIS's internal 2015 memorandum describing the allegations of fraud. CAR at 21–22, 30–32,

9  43–48. An agency action is arbitrary and capricious "when the agency has relied on factors

10 which Congress has not intended it to consider, entirely failed to consider an important aspect of

11 the problem, offered an explanation for its decision that runs counter to the evidence before the

12 agency, or is so implausible that it could not be ascribed to a difference in view or the product of

13 agency expertise." *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002). This is

14 not the case here.

15         However, this does not end the analysis. An agency action must also be set aside if it is

16 "not in accordance with law" or "contrary to constitutional right." 5 U.S.C. § 706(2)(A),(B). The

17 Court concludes that CBP and USCIS's actions were both. Namely, the agencies' actions were

18 not consistent with procedures afforded by the Immigration and Nationality Act ("INA"), 8

19 U.S.C. § 1221 *et seq.*, or the Fifth Amendment's due process clause.

20         Plaintiff first received LPR status more than fifteen years ago. CAR at 47. According to

21 the INA, 8 U.S.C. § 1256(a), an alien's LPR status can only be rescinded within the first five

22 years of the adjustment of status. 8 U.S.C. § 1229a; *Oloteo v. I.N.S.*, 643 F.2d 679, 682 (9th Cir.

23 1981); *see Stolaj v. Holder*, 577 F.3d 651, 656 (6th Cir. 2009) (describing an Immigration

24 Judge's review of LPR status allegedly obtained by fraud). This period lapsed long ago.

25 Therefore Defendants' actions were not in accordance with the procedural protections afforded

26 by the INA.

1    Furthermore, an LPR "may not be deprived of his life, liberty or property without due

2    process of law." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953). Plaintiff has a

3    constitutionally-protected liberty interest in his LPR status. *Landon v. Plasencia*, 459 U.S. 21, 34

4    (1982). When determining what process is due before the deprivation of such an interest, the

5    Court must balance three factors: 1) the private interest affected, 2) the risk of an erroneous

6    deprivation, and 3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

7    The private interest at stake in this case is a weighty one, particularly for a person who has been

8    in the United States with LPR status as long as Plaintiff has. *See Landon*, 459 U.S. at 34.

9    Without a Green Card, Plaintiff cannot work in the United States or travel outside of the United

10   States with any hope of returning. (Dkt. No. 15 at 4.) Further, the risk of erroneous deprivation

11   through summary rescission is high. "When protected interests are implicated, the right to some

12   kind of prior hearing is paramount." *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972).

13   Finally, while the Government undoubtedly has an interest in the "efficient administration of

14   immigration laws," this interest does not warrant summary rescission of LPR benefits. *Landon*,

15   459 U.S. at 34. Plaintiff is entitled to a hearing to determine the propriety of his LPR status. Until

16   that time, that status cannot be revoked.

17   Defendants argue that Plaintiff was not eligible for LPR status and that its actions were a

18   correction of an error rather than a rescission. The Court disagrees. Plaintiff was accorded LPR

19   status by a duly-authorized USCIS officer. Whether conferment of status was lawful must be put

20   to an Immigration Judge. *See* 8 U.S.C. § 1229a. This Court need only consider "whether the

21   immigration officer reviewing [Plaintiff's] case was empowered to adjust [Plaintiff's] status and,

22   if so, whether the officer decided to adjust [Plaintiff's] status." *Sharkey v. Quarantillo*, 541 F.3d

23   75, 85 (2d Cir. 2008). Defendants do not meaningfully argue that Officer Schofield was not

24   empowered to adjust Plaintiff's status. (*See generally* Dkt. Nos. 16, 24.) Instead, they allege that

25   because Plaintiff was never statutorily eligible for LPR status, his status is void *ab initio*. (Dkt.

26   No. 16 at 5–6) (citing *Shin v. Holder*, 607 F.3d 1213, 1217–18 (9th Cir. 2010); *Monet v. I.N.S,*

791 F.2d 752, 753 (9th Cir. 1986)). But Defendants cite no cases holding that such a determination can be made beyond the five year rescission period by CBP, USCIS, or any other agency. Therefore, the Court finds that this is a determination for an Immigration Judge, not Defendants. *See Shin*, 607 F.3d at 1216 (holding by an *Immigration Judge* that lawful status was wrongly granted); *Monet*, 791 F.2d at 753 (similar holding).

Whether an alien was "lawfully admitted" is a distinct issue from whether an LPR retains his or her status during the pendency of removal proceedings. *Shin*, 607 F.3d at 1217–18. "Even where there are grounds to seek deportation or removal, a lawful permanent resident is lawfully present in the United States until a final deportation or removal order is entered." *Hernandez De Anderson v. Gonzales*, 497 F.3d 927, 943 (9th Cir. 2007). Further, Plaintiff is entitled to a Green Card as proof of that status. *See Etuk v. Slattery*, 936 F.2d 1433, 1447 (2d Cir. 1991) ("To revoke a LPR's green card pending completion of the deportation process would severely undermine the integrity of the process itself and impose significant hardship on the alien involved."); 8 C.F.R. § 264.5(g) ("A person in . . . removal proceedings is entitled to evidence of permanent resident status until ordered excluded, deported, or removed.").

The Court finds that Defendants' rescission of Plaintiff's LPR status and confiscation of his Green Card without the benefit of a hearing was "not in accordance with law" and "contrary to constitutional right." 5 U.S.C. § 706(2)(A),(B). Accordingly, the Court must set aside these actions.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 15) is GRANTED and Defendants' cross-motion for summary judgment (Dkt. No. 16) is DENIED. Defendants are ORDERED to return Plaintiff's Green Card and reinstate his LPR status until such time as removal proceedings are complete.

//

//

DATED this 17th day of July 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C17-1704-JCC
PAGE - 7